Joseph **LORCH** and Hannah Lorch, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Michael T. **HARGES** and Janet G. Harges, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 1097, Docket 79–4051.

United States Court of Appeals, Second Circuit.

Argued May 24, 1979.

Decided Sept. 5, 1979.

Leonard Bailin, P. C., New York City, for petitioners-appellants.

Daniel F. Ross, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge:

Joseph Lorch and Michael Harges appeal from an order of the Tax Court approving the Commissioner's assessment of deficiencies in their federal income tax returns for the year 1970.[1] Finding that petitioners were not entitled to certain ordinary losses claimed under IRC § 165(c)(2) on their 1970 returns, we affirm the decision of the Tax Court.

The facts are undisputed. In January of 1962, Lorch and Harges entered into separate agreements with Hayden, Stone & Company, Inc., a brokerage firm, designed to help Hayden Stone meet the minimum capital requirements of the New York and American Stock Exchanges. The agreements, similar to those Hayden Stone had with over one hundred other investors, required Lorch and Harges each to give to Hayden Stone a noninterest bearing promissory note in the face amount of $100,000, and as collateral on the note, to place securities into an account with Hayden Stone. Petitioners' liability on their notes was expressly limited to the value of the assets in their collateral accounts, and each was free at all times to withdraw any of the securities in his account so long as it was replaced with cash or securities of equivalent value. Although petitioners' rights to the assets in their accounts were subject to Hayden Stone's authority to demand payment on their notes, each otherwise retained full legal and beneficial ownership of his securities, including the right to vote as a shareholder and to receive interest or income distributions.

In return for the obligations undertaken by Lorch and Harges, Hayden Stone agreed to pay them 5% annually on the face value of their notes. Additionally, Hayden Stone was required, in the event that it demanded payment on the promissory notes, to give to each petitioner the firm's subordinated debentures at 6% interest in the face amount each actually paid in satisfaction of his note.[2]

Lorch and Harges maintained their collateral accounts with Hayden Stone and

---

1. Petitioners' wives are parties to this proceeding solely by virtue of their having joined in the filing of the 1970 returns.

2. Petitioners' arrangement with Hayden Stone was terminable by either party upon six months written notice.

received the 5% annual interest called for by the agreement from 1962 until 1970. In 1970, however, Hayden Stone faced severe financial difficulties and it consequently demanded that its subordinated lenders, Lorch and Harges included, pay their secured notes or face liquidation of the assets in their accounts. In response to the demand, Lorch deposited an additional $10,000 with Hayden Stone and took back certain common stock from his account. Lorch permitted the rest of the securities in his account, in which he had a cost basis of $126,005.51, to be liquidated by Hayden Stone, which ultimately received $80,026.84 upon their sale. Including dividends and interest retained by Hayden Stone and a pre-existing credit balance, all of which amounted to $1,074.75, a total of $91,101.59 was used to satisfy Lorch's obligation to Hayden Stone.

Upon receiving Hayden Stone's call for payment, Harges deposited $66,825.05 with the firm and in return took back all of the securities in his collateral account except for one bond in which his cost basis was $20,000.00. Hayden Stone received $19,460.73 from the sale of that bond, and thus the total amount used to satisfy Harges' obligation to the firm, including $2,269.70 in interest and dividend income retained by Hayden Stone, was $88,592.48.

Hayden Stone's demand for payment from its subordinated lenders did not resolve the firm's financial difficulties, and by September of 1970 Hayden Stone had begun to liquidate its business assets. In order to eliminate the firm's negative net worth and thus reduce the possibility of the firm's being placed in liquidation under court-supervision, the subordinated lenders, petitioners included, agreed to exchange their rights to the firm's as yet unissued debentures for preferred stock. Under the terms of the agreement, Lorch and Harges each received one share of the firm's preferred stock for each $100 in claims against the firm.[3] Altogether, Lorch received 911.-01 shares and Harges 885.92 shares. The parties have stipulated that the preferred stock was worth $20 per share at the time petitioners received it. As of May, 1977, the date of trial, neither petitioner had disposed of his stock.

Lorch and Harges each claimed ordinary loss deductions under § 165(c)(2) on their 1970 federal income tax returns in the amount by which the sum of the cash in their collateral accounts plus their bases in the securities liquidated by Hayden Stone exceeded the fair market value of the Hayden Stone preferred stock they ultimately received. The Commissioner subsequently issued a notice of deficiency against each petitioner.

Following petitioners' appeal, the Tax Court held that the only deductible losses incurred by petitioners were capital losses resulting from Hayden Stone's sale of their unredeemed securities and limited in amount to the excess of petitioners' bases in the securities over the amount realized upon sale. The Tax Court determined that Hayden Stone acted as petitioners' agent in selling their unredeemed securities and that petitioners then exchanged the proceeds of those sales together with the additional cash deposited in their accounts for rights to Hayden Stone's subordinated debentures. Although the debenture rights were worth less than the consideration given for them, the Tax Court concluded that no loss on their acquisition was as yet deductible since petitioners' subsequent exchange of their debenture rights for preferred stock was a tax free recapitalization under IRC § 368(a)(1)(E).[4]

Not surprisingly, petitioners on this appeal argue that the Commissioner and the Tax Court have mischaracterized their transactions with Hayden Stone. Citing *Stahl v. United States*, 142 U.S.App.D.C. 309, 441 F.2d 999 (D.C. Cir. 1970) petitioners contend that in substance the transactions

---

3. Among the business assets disposed of by Hayden Stone was the firm name. Consequently the preferred stock received by petitioners was actually issued in the firm's new name, Hayden Stone Equities.

4. Non-recognition of gain or loss pursuant to a reorganization is provided by IRC § 354(a).

were bailments, petitioners transferring possession and limited use of their pledged securities to Hayden Stone while retaining legal and beneficial ownership. Since the bailments were entered into in the hope and expectation of profit, petitioners claim they are entitled to ordinary loss deductions under § 165(c)(2) to the extent that the preferred stock they received from Hayden Stone was worth less than the cash and securities they surrendered.

As the Commissioner has argued, petitioners' attempt to characterize their arrangements with Hayden Stone as bailments disregards the fact that petitioners partially terminated any bailment that existed by redeeming for cash certain of the securities in their collateral accounts before those accounts were liquidated. But even ignoring the extent to which petitioners' analysis collapses separate transactions into one, petitioners cannot, simply by applying the label bailment, alter the fact that the losses they seek to deduct resulted from their agreement to become, at Hayden Stone's option, creditors of the firm through the purchase of its subordinated debentures. Regardless of whether petitioners and Hayden Stone stood as bailors and bailee with respect to the securities deposited in the collateral accounts, the deposit arrangements simply secured petitioners' commitments to pay, upon Hayden Stone's demand and in return for its subordinated debentures, the amount fixed in their promissory notes.

■ From Hayden Stone's viewpoint the arrangement permitted it to include the taxpayers' assets in its capital for the purpose of meeting the stock exchanges' asset requirements. From the taxpayers' point of view, the arrangement enabled them to receive an additional 5% annual income over and above the interest and dividends received by them on the securities deposited with it to secure their obligations to make the loans to it upon demand. The risk the taxpayers took was that Hayden Stone might make such a demand in which event they would be required to honor their commitments to lend it an amount equal to the value of their assets deposited with it to secure their obligations under the arrangement. Thus each transaction amounted to a purchase by Hayden Stone of a call on a line of credit or, alternatively, a put on its debentures, the cost to Hayden Stone being the 5% annual interest it was required to pay petitioners. When the demands for the loans were made, each taxpayer had the right to withdraw any securities by depositing their market value in cash. Thus, when Hayden Stone liquidated the account, it sold the securities, in effect, as custodian for the taxpayer. Hence, the taxpayer was required to recognize gain or loss, as the case may be, on the sale of the securities, and the gain or loss was a capital one. Under the taxpayers' analysis, the net loss would differ depending on whether the taxpayer withdrew the securities, sold them independently and remitted the proceeds to Hayden Stone, or let Hayden Stone do the selling. Such a procedure would permit considerable tax evasion.

■ When Hayden Stone demanded payment on the notes its relationship with petitioners became one of debtor-creditor. It is elementary that a taxpayer does not incur a loss when he makes a loan unless the debt is worthless, IRC § 165(g), in which event the resulting loss must be considered one from a sale or exchange of a capital asset within the taxable year, IRC § 166(d). Such was not the case here, since the taxpayers expected to receive repayment in the form of debentures bearing 6% interest[5] and the

---

5. In a case involving another of Hayden Stone's subordinated lenders, *Michtom v. United States*, 573 F.2d 58 (Ct.Cl.1978), the Court of Claims held that the taxpayer was entitled to an ordinary loss upon the exchange of his debenture rights for preferred stock. The Commissioner had not argued that the exchange was a tax free recapitalization and the Court of Claims held that taxpayer's debenture rights

were not a capital asset because they lacked the ability to appreciate or depreciate over time.

We find the Court of Claims reasoning difficult to comprehend. Even if a necessary characteristic of a capital asset were the ability to appreciate or depreciate, and we know of nothing which suggests that it is, factors such as the soundness of Hayden Stone and the prevail-

debentures, while not worth their face value, would have been far from worthless.

Despite petitioners' reliance on *Stahl*, we do not believe that our characterization of Hayden Stone's and petitioners' eventual relationship as debtor-creditor, with Hayden Stone's debt being evidenced by the subordinated debentures to which petitioners became entitled, necessarily contradicts anything written in that case. The taxpayer in *Stahl*, like the petitioners in this case, loaned securities to a brokerage firm under an arrangement that left the taxpayer with beneficial ownership of the securities. However, the securities were subordinated to claims of the firm's creditors and the taxpayers had no right to redeem them in the event they were needed by the brokerage firm to satisfy its creditors. The Court of Appeals for the District of Columbia concluded that the arrangement constituted a bailment and permitted the taxpayer to deduct from ordinary income the loss sustained when the brokerage firm sold the securities to satisfy creditor claims. The basic rationale for the court's decision, however, was that no debtor-creditor relationship existed between the firm and the taxpayer since the agreement did not clearly obligate the firm to reimburse the taxpayer in the event the taxpayer's securities were sold to satisfy claims of the firm's creditors. In contrast, petitioners' status as creditors of Hayden Stone and the fixed nature of Hayden Stone's obligation to repay them was made unmistakably clear by petitioners' entitlement to the firm's debentures in the event their notes were called.

██ The final issue that we must address is whether the petitioners suffered a deductible loss when they exchanged their debenture rights for Hayden Stone preferred stock. Petitioners have disputed the Tax Court's finding that the exchange was a tax-free recapitalization, arguing that there was no intent to continue business activity in corporate form since Hayden Stone had already begun the process of liquidation. We find this argument unpersuasive, however. The exchange enabled Hayden Stone to avoid involuntary liquidation and, indeed, it was still in business at the time of trial, some seven years after the exchange. Its business objective during this period was to proceed with the collection of its assets and payment of its creditors while avoiding court-supervised liquidation, and the exchange of debenture rights for preferred stock enabled it to continue with that activity. In all other respects the exchange was an archetypal recapitalization, converting Hayden Stone's net worth from negative to positive but leaving unaffected the priority of petitioners' claims on the firm. Accordingly, petitioners incurred no deductible loss upon the exchange of their debenture rights for Hayden Stone preferred stock.

██ In sum, we find no basis for granting petitioners tax benefits that are unavailable to ordinary creditors or debenture holders. Hayden Stone's liquidation of petitioners' securities entitled them to a capital loss in the amount by which their bases in those securities exceeded the proceeds of sale. Petitioners have as yet sustained no other deductible loss.

Affirmed.

---

ing interest rate could influence the value of its debentures. We note in addition that adherence to the Court of Claims' reasoning would create opportunities never intended by Congress for the conversion of bad debt losses from capital to ordinary.