COLOGNE LIFE REINSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10337–81.     Filed May 12, 1983.

*Carolyn P. Chiechi, Francis M. Gregory, Jr., Michael A. Bell,* and *Dennis L. Allen,* for the petitioner.
*Evelyn E. Small,* for the respondent.

---

## OPINION

WHITAKER, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Taxable year | Deficiency |
|---|---|
| 1974 | $123,141 |
| 1975 | 123,433 |
| 1976 | 133,077 |
| 1977 | 170,683 |

The sole issue for decision is whether petitioner is entitled to the deduction under section 809(d)(5)[1] with respect to its risk premium reinsurance contracts.

This case was submitted fully stipulated. The stipulation of facts and exhibits attached thereto are so found.

At the time it filed the petition, Cologne Life Reinsurance Co. was a corporation organized under the laws of the State of Connecticut with its principal office in Stamford, Conn.

During the years in issue, petitioner was engaged exclusively in the business of indemnity life reinsurance. Under indemnity life reinsurance, one insurer, commonly called the reinsurer, agrees to indemnify another insurer, commonly called the ceding company, against the risk arising out of an insurance contract issued by the ceding company or out of a reinsurance contract with respect to which the ceding company itself is a reinsurer. The obligations and duties of the reinsurer run solely to the ceding company. There is no privity of contract between the reinsurer and the policyholder of the ceding company whose risk is reinsured. Thus, the reinsurer has no direct obligation to the policyholder of the ceding company for payment of reinsured death claims or other benefits. The three principal types of indemnity life reinsurance are risk premium reinsurance, coinsurance, and modified coinsurance. It is only petitioner's risk premium reinsurance which is involved in this controversy.

Under petitioner's risk premium reinsurance contracts, the ceding company was required to pay, in advance, annual premiums to purchase reinsurance of assigned mortality risks. Petitioner incurred no obligation to reimburse the ceding

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended.

company for such items as agents' commissions or other expenses, cash surrender values, or dividends provided by the ceding company to its policyholders. Nor did petitioner acquire any interest in the premiums received or the reserves held by the ceding company, the assets supporting those reserves, or the investment income derived from those assets.

In establishing its annual premium rates, petitioner independently determined and took into account mortality and interest assumptions and other facts that affected the cost of reinsurance, without reference to the premium rates and structures adopted by the ceding companies. Except at early ages, the premium rates established by petitioner reflected actuarially derived increases in the mortality rates applicable to the risks it was reinsuring associated with the advancing ages of the insureds and the policy durations. This increase was required without regard to whether the ceding company was receiving a level premium under its reinsured insurance policies. Premiums under petitioner's risk premium reinsurance contracts were payable even if policies issued by the ceding company to its policyholders became paid up. The amount of reinsurance premiums due petitioner was not affected by any possible inadequacy or overadequacy of the premiums under the insurance policies or contracts issued by the ceding company. Similarly, petitioner established on the basis of recognized mortality tables and assumed rates of interest, adopted independently of the ceding companies, the amount of its life insurance reserves for the reinsurance of mortality risks under its risk premium reinsurance contracts in effect during the years in issue.

In contrast, under coinsurance and modified coinsurance reinsurance, the reinsurer and the ceding company share the net benefit and obligations arising out of the insurance policy or contract that is reinsured. The reinsurer generally pays a negotiated ceding commission to the ceding company or a proportionate share of agents' commissions and other expenses, a proportionate share of cash surrender values attributable to the reinsured insurance policy or contract and, sometimes, a proportionate share of dividends paid by the ceding company to its policyholders.

The reinsurer under both coinsurance reinsurance and modified coinsurance reinsurance usually assumes a propor-

tionate share of all the risks (e.g., mortality, investment, and lapse) associated with and according to the terms of the insurance contract between the ceding company and its policyholder. If a death or surrender occurs, the reinsurer is liable for the proportionate share of the gross amount of the death claim or surrender value, respectively. In return, the reinsurer generally receives a pro rata share of premiums received by the ceding company.

Under coinsurance, the reinsurer establishes its life insurance reserves for the plan of insurance of the original insurance policies or contracts reinsured. Under modified coinsurance reinsurance, the ceding company establishes and holds all the life insurance reserves with respect to the policy, including the portion reinsured, and all or part of the gross investment income derived from the assets in relation to such reserves is paid by the ceding company to the reinsurer as part of the consideration for the reinsurance.

During the years in issue, petitioner was, by statutory definition, a "life insurance company,"[2] and thereby subject to tax under sections 801 through 820. Under these sections, the issuance of indemnity life reinsurance is treated generally as the issuance of life insurance. *Beneficial Life Insurance Co. v. Commissioner*, 79 T.C. 627, 647–648 (1982); see also *Alinco Life Insurance Co. v. United States*, 178 Ct. Cl. 813, 373 F.2d 336 (1967). Where Congress intended exceptions to this rule, it specifically so provided.[3]

Sections 801 through 820 provide a three-phased computation for determining "life insurance company taxable income."[4] Only the second phase is directly involved in this case. The second phase tax base consists of "Gain from Operations," defined in section 809(b)(1) as that amount by which certain

---

[2]The term "life insurance company" is defined by sec. 801(a). The regulations thereunder in pertinent part expressly include "reinsurance" as life insurance:

"(1) The term "insurance company" means a company whose primary and predominant business activity during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. * * * [Sec. 1.801–3(a)(1), Income Tax Regs.]"

See also *Alinco Life Insurance Co. v. United States*, 178 Ct. Cl. 813, 373 F.2d 336 (1967).

[3]See, e.g., sec. 806(a), sec. 809(c)(1), sec. 809(d)(7).

[4]Sec. 802(b).

items of income exceed the deductions provided by section 809(d).

On its Federal income tax returns for each of the years 1974 through 1977, petitioner claimed deductions under section 809(d)(5) based on its nonparticipating reinsurance contracts.[5] A "nonparticipating contract" is, for purposes of section 809(d)(5), one which contains no right to participate in the divisible surplus of the company. Sec. 1.809–5(a)(5)(ii), Income Tax Regs. A "participating contract" is one which contains a right to participate in the divisible surplus of the company. Sec. 1.811–2(a), Income Tax Regs. Divisible surplus is the amount accumulated from the total earnings of the company, either in a current year or in prior years, which is earmarked for distribution by dividend or similar distribution pursuant to a discretionary decision of the company's directors. Nondiscretionary distributions of return premiums and experience refunds, determined pursuant to a formula fixed in the insurance contracts, are not distributions of divisible surplus. *Republic National Life Insurance Co. v. United States*, 594 F.2d 530 (5th Cir. 1979); *American National Insurance Co. v. United States*, ___Ct. Cl. ___, 690 F.2d 878 (1982).

By statutory notice, respondent determined that petitioner was not entitled to any section 809(d)(5) deductions. Subsequently, the parties agreed (1) to allow the section 809(d)(5) deductions attributable to petitioner's coinsurance and modified coinsurance of nonparticipating contracts; (2) to disallow the deductions attributable to petitioner's coinsurance and modified coinsurance of participating contracts; and (3) to

---

[5]Sec. 809(d)(5) provides a deduction computed as follows:

(5) CERTAIN NONPARTICIPATING CONTRACTS.—An amount equal to 10 percent of the increase for the taxable year in the reserves of nonparticipating contracts or (if greater) an amount equal to 3 percent of the premiums for the taxable year (excluding that portion of the premiums which is allocable to annuity features) attributable to nonparticipating contracts (other than group contracts) which are issued or renewed for periods of 5 years or more. For purposes of this paragraph, the term "reserves for nonparticipating contracts" means such part of the life insurance reserves (excluding that portion of the reserves which is allocable to annuity features) as relates to nonparticipating contracts (other than group contracts). For purposes of this paragraph and paragraph (6), the term "premiums" means the net amount of the premiums and other consideration taken into account under subsection (c)(1) [of 809]. * * *

In 1974 and 1975, petitioner's sec. 809(d)(5) deductions were based upon increases in reserves, and in 1976 and 1977, on its premiums.

disallow the deductions attributable to petitioner's reinsurance of group contracts.[6] With respect to the remaining deductions, i.e., those attributable to petitioner's risk premium reinsurance contracts, the parties agreed that the only issue to be decided is whether these contracts were "nonparticipating" within the meaning of section 809(d)(5).[7]

Section 809(d)(5) was enacted in order to balance the tax advantage enjoyed by life insurance companies which issue participating contracts, and are thereby able to maintain a reserves "cushion" without tax liability, over companies which issue nonparticipating contracts and who thereby are denied the same opportunity.[8] The parties stipulated that petitioner's

---

[6]

|  | 1974 | 1975 | 1976 | 1977 |
|---|---|---|---|---|
| Total sec. 809(d)(5) deduction claimed | $331,248 | $514,306 | $554,869 | $711,178 |
| Deduction claimed for coinsurance and modified coinsurance of nonparticipating contracts | (55,520) | (58,973) | (70,928) | (113,207) |
| Deduction claimed for coinsurance and modified coinsurance of participating contracts | (5,020) | (68,141) | (27,659) | (36,550) |
| Deductions inadvertently claimed for reinsurance of group contracts | (8) | (13) | (32) | (30) |
| Deduction claimed for risk premium reinsurance | 270,716 | 387,179 | 456,250 | 561,391 |

We note that there is an apparent error or omission in the 1974 column since the respective elements of the deduction exceed the deduction by $16. We assume that the parties will correct this error in connection with the Rule 155 calculations.

[7]The parties stipulated that no portion of the premiums received or the reserves held with respect to the risk premium reinsurance contracts at issue was allocable to annuity features or group contracts. These contracts were issued or renewed for periods of 5 years or more. See sec. 809(d)(5) and note 5 above.

[8]The Senate Committee on Finance report discussed sec. 809(d)(5) as follows:

"5. *Deduction for nonparticipating policies.* Policyholder dividends in part reflect the fact that mutual insurance is usually written on a higher initial premium basis than nonparticipating insurance, and thus the premiums returned as policyholder dividends, in part, can be viewed as a return of redundant premium charges. However, such amounts provide a "cushion" for mutual insurance companies which can be used to meet various contingencies. To have funds equivalent to a mutual company's redundant premiums, stock companies must maintain relatively larger surplus and capital accounts, and in their case the surplus generally must be provided out of taxable income. To compensate for this, the House bill allows a deduction for nonparticipating insurance equal to 10 percent of the

risk premium reinsurance contracts at issue did not contain any provision granting to the ceding company or to the person insured by the ceding company any right to participate in the divisible surplus of petitioner. The parties further stipulated that as a life insurance company, petitioner was required to maintain a certain level of reserves, and, as a stock company which issued contracts that contained no right to participate in its divisible surplus, was required to maintain those reserves without a "cushion" of "redundant premiums."

It appears that the contracts issued by petitioner fall squarely within both the plain language and intended scope of section 809(d)(5). We find no ambiguity in the statute, and are thus strictly bound to apply its clearly worded mandate. *Old Colony Railroad Co. v. Commissioner*, 284 U.S. 552, 560 (1932); *Warrensburg Board & Paper Corp. v. Commissioner*, 77 T.C. 1107, 1110–1111 (1981).

Respondent, however, argues that risk premium reinsurance is outside the intended scope of section 809(d)(5), and that the statute's apparently plain language does not apply. Respondent's primary argument, as summarized in his brief, is that:

A careful study of the statutory and regulatory definitions reveals that the term "nonparticipating contract" as used in I.R.C. §809(d)(5) is not descriptive of a risk premium reinsurance contract. "Participating" and "nonparticipating" are terms which describe the disposition of divisible surplus. "Divisible surplus" is, once distributed, a "dividend to policyholders". Under the statutory and regulatory definitions, an amount paid to another life insurance company with respect to reinsurance ceded can never be a dividend to a policyholder. Thus, risk premium reinsurance contracts cannot be participating nor can they be nonparticipating.

This argument rests principally upon the classification as "return premium" assigned to all distributions by reinsurers

---

increase in life insurance reserves attributable to nonparticipating life insurance (not including annuities). Your committee has recognized the validity of the reasons for providing such a deduction and has therefore continued it in your committee's version of the bill. However, basing this addition, as does the House bill, only upon additions to life insurance reserves does not take account of the mortality risk factor present in policies involving only small reserves. To overcome this deficiency, your committee's amendments provide that a special 3 percent deduction based on premiums is to apply, instead of the 10 percent deduction, where it results in a larger deduction. This is a deduction equal to 3 percent of the premiums for the current year attributable to nonparticipating policies (other than group or annuity contracts) issued or renewed for a period of 5 years or more. [S. Rept. 291, 86th Cong., 1st Sess. (1959), 1959–2 C.B. 770, 786.]"

to the ceding company by section 809(c)(1). Respondent does not argue, for example, that any uniform State law provision precludes a reinsurer from making a discretionary distribution. Rather, he simply argues that for Federal tax purposes, every distribution by a reinsurer is a "return premium."[9] Because return premiums *by definition* cannot be dividends to policyholders, respondent asserts that a reinsurance contract can never be a participating contract. The argument concludes, simplistically, that since reinsurance contracts can never be participating, they also can never be nonparticipating.

We find it unnecessary to address respondent's assertion that, for tax purposes, there can never be a participating reinsurance contract, since the issue here is not whether there can be a participating reinsurance contract, but whether petitioner issued nonparticipating contracts within the meaning of section 809(d)(5).

Respondent would apparently require that a life insurance company have the option of issuing participating contracts in order that its contracts which contain no right to participate in the company's divisible surplus be considered "nonparticipating" within the meaning of section 809(d)(5). However, no such requirement is imposed by the statute, the regulations, or the legislative history. We have no authority to fashion one judicially. *Service Bolt & Nut Co. Trust v. Commissioner*, 78 T.C. 812, 817–818 (1982). Nor has respondent offered any substantive justification for imposing the requirement. To the contrary, a deduction intended to compensate for the disadvantage suffered by the issuer of nonparticipating contracts seems to us to be simply not dependent upon that company's

---

[9]The second sentence of sec. 809(c)(1) reads as follows:

"Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums."

The final sentence of sec. 1.811–2(a), Income Tax Regs., reads as follows:

"Thus, so-called excess-interest dividends and amounts returned by one life insurance company to another in respect of reinsurance ceded shall not be treated as dividends to policyholders even though such amounts are not fixed in the contract but depend upon the experience of the company or the discretion of the management."

ability to issue a participating contract. Applying the definition of "nonparticipating contract" provided by section 1.809–5(a)(5)(ii), Income Tax Regs., we conclude, as did the Court of Claims in *Lincoln National Life Insurance Co. v. United States,* 217 Ct. Cl. 515, 582 F.2d 579, 596 (1978), that "[petitioner] is obviously correct in its contention that its *reinsurance contracts* are nonparticipating since they create no right in anyone to share in [petitioner's] divisible surplus."

Thus, we reject the grounds upon which respondent relies in arguing that Congress did not intend the deduction to apply to reinsurance. Further, it is clear that Congress was well aware of the character and peculiarities of reinsurance, yet nonetheless intended that it be taxed as life insurance, except where specifically excepted. Section 809(d)(5) provides no specific exception for reinsurance. Instead, section 809(d)(5) refers back to section 809(c)(1) for meaning of the term "premiums." Section 809(c)(1) refers specifically to reinsurance distributions:

Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums.

Thus, Congress was aware of and contemplated the applicability of section 809(d)(5) to reinsurance. The Commissioner's section 809(d)(5) regulations similarly refer to his section 809(c)(1) regulations for the definition of "premiums." In pertinent part, this regulation reads:

Furthermore, amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded shall be included in return premiums. * * *

Sec. 1.809–4(a)(1)(ii), Income Tax Regs. We are thus confident that Congress' failure to provide a specific exception in section 809(d)(5) from the general rule that reinsurance is taxed as the issuance of life insurance reflected an informed intent to grant to reinsurers the deduction provided by that section.

Respondent also argues that the present issue is controlled by *Lincoln National Life Insurance Co. v. United States, supra,* in which the Court of Claims expressed the opinion that—

Congress simply did not intend that reinsurance agreements, as such, should give rise to a §809(d)(5) deduction at all except to the extent that they pass through the attributes of the *nonparticipating policies* they cover. [582 F.2d at 597.]

In *Lincoln*, the issue before the court relating to section 809(d)(5) was whether that Code section applied to coinsurance and modified coinsurance nonparticipating reinsurance contracts which reinsured participating policies issued by the ceding company. Under the nonparticipating coinsurance and modified coinsurance reinsurance of participating contracts, the reinsurer assumed a proportionate share of the death benefits, agents' commissions, other expenses, cash surrender values, and dividends, and received in exchange for the assumption of these obligations a pro rata share of the premiums received by the ceding company. Since the premiums charged by the ceding companies with respect to their participating contracts contained a "cushion" of "redundant premiums," the premiums received by the reinsurer in *Lincoln* included a pro rata share of the "redundant premiums cushion."

The Court of Claims held that section 809(d)(5) did not apply to the extent that "redundant premiums" received by the ceding company from its policyholders were "passed through" to the issuer of nonparticipating coinsurance and modified coinsurance reinsurance. The court interpreted the phrase "attributable to nonparticipating contracts" in section 809(d)(5) to refer to what it described as the "underlying policy contracts which are reinsured," in other words, the policies issued by the ceding company. In reaching this result, the court substituted the word "policies" for the word "contracts," apparently in the belief that the instrument issued by the ceding company to its policyholders is an insurance policy while the agreement between the ceding company and the reinsurer is a "contract."[10] The result in *Lincoln* was to exclude from the premium base to which the 3 percent applied those premiums paid for reinsuring participating contracts.

---

[10]The court stated: "In other words, it is as though the statute read 'attributable to nonparticipating *policies*.' " *Lincoln National Life Insurance Co. v. United States*, 217 Ct.Cl. 515, 582 F.2d 579, 596 (1978).

We feel that the Court of Claims fell into error in its confusion over the terms "contracts" and "policies."[11] Its interpretation in fact appears to require a reading of the word "contracts" as used in section 809(d)(5) to refer in one instance to the agreement between the reinsurer and the ceding company and in another to the "policy" issued by the ceding company to its policyholder. For example, the court (582 F.2d at 595) holds that there are four requirements for the alternative 3 percent of premiums test. The second requirement is that the premiums must be attributable to nonparticipating contracts and, for that purpose, the word "contracts" is construed to refer to the underlying policies which are reinsured. However, the fourth requirement is that the "contract" must be issued or renewed for 5 years or more. Here, the same word refers to the reinsurance agreement.[12] This feat of legerdemain we do not accept. We believe that throughout section 809(d)(5) the word "contracts" refers to the insuring agreements which in the case of a reinsurer are the contracts or policies which it issues to the ceding company.

Coinsurance and modified coinsurance presented the special problem of "passed-through redundant premiums" which the *Lincoln* court was unable to resolve within the plain language of section 809(d)(5). It is unclear whether the *Lincoln* court in the statement relied upon by respondent was merely summarizing its position on coinsurance and modified coinsurance forms of reinsurance or whether it intended the statement to apply also to risk premium reinsurance. There is no reference in the opinion to the existence of risk premium reinsurance and that court may not have been aware of this type of

---

[11]Although the relevant legislative history does employ the word "policies," it also refers to "contracts." S. Rept. 291, 86th Cong., 1st Sess. (1959), 1959–2 C.B. 770, 776, 786. In any event, the two terms are used interchangeably in the Code, the regulations, and the insurance industry. The parties stipulated that a reinsurance contract is a contract for reinsurance setting forth the terms upon which the reinsurer will issue individual reinsurance policies. This is the extent of any distinction between the terms and it is clear that for purposes of applying sec. 809(d)(5) and in the life insurance industry in general, that these terms are employed interchangeably. See, e.g., secs. 1.809–5(a)(5)(iv) and 1.817–4(d)(3), example (5), Income Tax Regs. See also Black's Law Dictionary 943 (4th ed. 1968), which states that the written insurance contract is usually called the "policy."

[12]The court holds that "it is undisputable that Lincoln's coinsurance and modified coinsurance reinsurance contracts were issued or renewed for periods of 5 years or more." *Lincoln National Life Insurance Co. v. United States*, 582 F.2d at 595.

reinsurance contract. In any event, any suggestion in *Lincoln* concerning a general rule affecting the application of section 809(d)(5) to risk premium reinsurance is dictum, which we choose not to follow. See, e.g., *Lorch v. Commissioner*, 70 T.C. 674, 683 (1978), affd. 605 F.2d 657 (2d Cir. 1979), cert. denied 444 U.S. 1076 (1980).

In passing, we cannot fail to note the inconsistency in respondent's arguments. In its published position in Rev. Rul. 65–236, 1965–2 C.B. 229, and in its litigating position in *Lincoln*, as well as in the present case, respondent takes the position that the section 809(d)(5) deduction is allowed with respect to coinsurance and modified coinsurance contracts which reinsure underlying policies which are nonparticipating. This position in effect contradicts respondent's first argument, above, to the effect that risk premium reinsurance cannot be participating and therefore cannot be nonparticipating. Respondent apparently fails to realize that his argument applies with equal force to all three types of reinsurance since the key to it lies in the fact that distributions by a reinsurer to the ceding company are classified as return premiums for tax purposes. Respondent's position with respect to coinsurance and modified coinsurance requires him to interpret the "3 percent of the premiums" language in section 809(d)(5) as though Congress had inserted after the phrase "attributable to nonparticipating contracts" further qualifying language such as "*including premiums paid for reinsurance of nonparticipating policies under coinsurance and modified coinsurance but not risk premium reinsurance contracts.*" As Justice Powell commented in *United States v. Consumer Life Insurance Co.*, 430 U.S. 725, 741 (1977): "If anything, the language [of Code section 801] is a substantial obstacle to accepting the Government's position." So, with respect to section 809(d)(5), the statute simply does not lend itself to the Government's interpretation.

Finally, respondent argues that in allowing petitioner its section 809(d)(5) deduction, we are allowing an unintended double reduction with respect to that portion of the deduction

at issue calculated on the basis of "premiums held" and attributable to contracts with experience refund provisions,[13] i.e., (1) the deduction under section 809(d)(5), and (2) a decrease in premium (taxable) income in the amount of the return premiums. There is similarly no merit to this argument. For purposes of calculating the 3 percent of premiums deduction under section 809(d)(5), the term "premiums" means the *net* amount of the premiums and other consideration taken into account under section 809(c)(1). All experience refunds under indemnity reinsurance are treated as return premiums and therefore reduce the premium base for purposes of the 3-percent calculation under section 809(d)(5). Thus, the premiums upon which the 3-percent deduction under section 809(d)(5) is based are, by definition, already reduced under section 809(c)(1) by any experience refunds.

Petitioner was a "life insurance company" and, by statute, thereby subject to tax pursuant to sections 801 through 820. *Beneficial Life Insurance Co. v. Commissioner*, 79 T.C. 627, 647–648 (1982). Congress was aware of the existence of reinsurance at the time it enacted these sections and provided exceptions for reinsurance where it saw fit. Congress also recognized the need for certain exceptions to section 809(d)(5),[14] but chose not to provide one for reinsurance. As a "life insurance company," petitioner was required to take into account the reserves and premiums attributable to its nonparticipating risk premium reinsurance contracts in computing its "gain from operations." We hold that petitioner is entitled to the deduction based on those premiums and reserves which

---

[13]Approximately 2 percent of the total premiums for petitioner's risk premium reinsurance in effect during the years in issue were under contracts that contained a provision or an addendum with a provision allowing the ceding company to receive an experience refund in an amount, if any, determined pursuant to a formula fixed in such contracts. The amount of experience refund did not depend upon the total experience of petitioner or upon the discretion of petitioner's board of directors. The existence of such an experience refund provision therefore did not give the ceding company a right to participate in the divisible surplus of Cologne.

[14]See, e.g., the exceptions provided for annuity features and group contracts.

is unambiguously provided by the plain language of section 809(d)(5).

*Decision will be entered under Rule 155.*