**Raphael MEISELS and Zelda Meisels**

v.

**The UNITED STATES.**

**No. 416–80T.**

United States Claims Court.

June 2, 1983.

Sydney J. Schwartz, New York City, for plaintiffs.

Donald H. Olson, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser, Washington, D.C., of counsel.

## OPINION

MEROW, Judge:

Plaintiffs seek a refund stemming from a determination by the Internal Revenue Service (IRS) disallowing a loss claimed on their joint 1973 federal income tax return. Plaintiffs contest the determination made that the loss claimed was subject to the capital loss limitations imposed by section 165(f) of the Internal Revenue Code of 1954.[1] The case comes before the court upon motion and cross-motion for summary judgment.

### I. *Facts*

Commencing in 1963, Raphael Meisels was a full-time general partner of a brokerage firm, H. Hentz & Co., and after incorporation of the business in 1971 he was a stockholder and officer of H. Hentz & Co., Inc. Zelda Meisels was a limited partner of H. Hentz & Co. H. Hentz & Co. and H. Hentz & Co., Inc. experienced problems in meeting capital requirements imposed by the New York Stock Exchange. To remedy such capital problems, plaintiffs and others entered into subordination agreements with H. Hentz & Co. and H. Hentz & Co., Inc. which involved the execution of secured demand notes by which cash and securities owned by plaintiffs and others were subordinated to the rights of Hentz creditors.

In 1973 H. Hentz & Co., Inc. was forced to terminate business and a "Purchase of Assets" agreement was made on July 25, 1973 with Hayden Stone, Inc. (Hayden), which provided for a takeover of the Hentz business and certain liabilities. This July 25, 1973 agreement required that the present Hentz subordinated lenders or obligors under secured demand notes would agree to become subordinated lenders of Hayden or obligors under secured demand notes so as to transfer to Hayden a defined amount of capital. Zelda Meisels complied with this condition by executing, on August 17, 1973, a Secured Demand Note (SDN) for $490,000 payable to Hayden Stone, together with an accompanying "Secured Demand Note Collateral Agreement."

Following the 1973 takeover, Raphael Meisels continued as an employee of Hayden Stone, Inc. With Raphael Meisels' advice, Zelda Meisels traded in securities through the Hentz and successor Hayden Stone firm.[2] Her motivations in executing the August 17, 1973 SDN and accompanying collateral agreement were profit and to insure Raphael Meisels' continued employment.

The $490,000 SDN executed by Zelda Meisels was secured by collateral (securities of the maker) sufficient to cover the obligation. As compensation, she received 3 percent per annum of the amount of the note from Hayden Stone and she retained beneficial ownership of the collateral securities.

Hayden Stone could demand payment of the SDN in the event of the occurrence of a "financial restriction," a defined term relating to capitalization problems. If plaintiff

---

1. All citations, unless otherwise indicated, are to the Internal Revenue Code of 1954.

2. The 1973 joint federal income tax return involved in this matter reports sales of securities by Zelda Meisels of more than $850,000 with a long-term capital gain of over $100,000 and a short-term capital loss of $10,000.

refused to pay the amount demanded, Hayden Stone's only recourse was against the collateral. Any payments made or monies received upon liquidation of the collateral would reduce the amount of the SDN. Upon payment under the SDN, plaintiff, under a complex formula, obtained a right to receive either stock of Hayden Stone or certain junior debentures or, if neither were issued, the rights of a subordinated lender.

The controversy presented in this litigation had its genesis in Hayden Stone's demand for a payment on Zelda Meisels' SDN. The demand was for $172,784. Preferring to keep the collateral (stock and securities), Zelda Meisels paid the amount demanded on November 15, 1973. By an agreement dated December 14, 1973, with Hayden Stone, she released all rights to debentures or stock, as set forth in the SDN agreements, in exchange for 10 percent of the amount demanded by Hayden Stone ($17,278) and its agreement not to make further demands on the SDN or collateral.

On their joint federal income tax return for 1973, plaintiffs claimed an ordinary loss of $155,506—$172,784 minus the $17,278 obtained. Upon audit, the IRS disallowed the $155,506 ordinary loss deduction, asserting that the transaction was subject to the capital loss limitations imposed by section 165(f) of the Internal Revenue Code of 1954.[3]

Plaintiffs paid the additional tax involved, filed a refund claim with the IRS and, after the appropriate period of time, instituted the present litigation seeking a judgment against the United States for the amount involved.

## II. *Discussion*

It is contended by plaintiffs that the loss Zelda Meisels incurred as a result of the Hayden Stone demand for payment under the SDN agreements is allowable under 26 U.S.C. § 165, which reads in pertinent part:

(a) *General Rule.*

There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *

(c) *Limitation of losses of individuals.*

In the case of an individual, the deduction under subsection (a) shall be limited to * * *

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *.

Section 165(f) acts as a limitation on losses otherwise deductible under § 165. It states:

(f) *Capital Losses.*

Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.

Sections 1211 and 1212 outline the computation of a capital loss in assessing the deduction which may be taken against ordinary income.

Capital asset is defined in § 1221:

For purposes of this subtitle, the term "capital asset" means *property* held by the taxpayer (whether or not connected with his trade or business), but does not include * * * [exceptions not relevant to this case]. [Emphasis added.]

Plaintiffs argue that the release of Zelda Meisels' right to debentures was not the sale or exchange of a capital asset because it was merely the termination of a bailment agreement. Plaintiffs rely on *Stahl v. United States,* 441 F.2d 999 (D.C.Cir.1970), as authority.

In *Stahl* the taxpayer, who was not a dealer in securities, pledged her securities to a brokerage firm to meet its capital requirements. She retained beneficial and legal ownership of those securities and, in addition, was paid one percent of their value per quarter as consideration for their use by the brokerage firm. By the terms of the original agreement, the securities were to be returned to the taxpayer on May 12, 1963, subject to the claims of creditors of the firm. A subsequent agreement extended the date of return. Prior to this new

---

**3.** Raphael Meisels, then an employee of Hayden Stone, Inc., claimed and was allowed an ordinary loss of $133,120 on the same return for his equivalent SDN transaction.

date the firm sold the securities and filed for bankruptcy. The taxpayer argued that her loss was ordinary under § 165 because it resulted from a transaction entered into for profit. The IRS disagreed and ruled that the loss was a nonbusiness bad debt under § 166(d) (which is treated as a short-term capital loss).

The court focused on the IRS's § 166 argument. It held that, to find a debtor-creditor relationship, there must be an unconditional obligation of the debtor to pay the creditor. Since the taxpayer's "general" right to be repaid was conditioned upon there being sufficient funds to pay the creditors of the brokerage firm, the court held that the transaction was a bailment entered into for profit with a risk of loss.

In analyzing whether the transaction was capital in nature, Judge Leventhal pointed out that *Putnam v. Commissioner,* 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956), and its progeny held that § 166 was intended to cover "situations where the transaction represents financing provided to a corporation by a taxpayer-stockholder to protect his pre-existing investment." Since Mrs. Stahl had no pre-existing investment in the brokerage firm, the transaction lacked the "capital hue." *Stahl* at 1003.

Plaintiff asserts that the agreement in this case is a bailment like the one found in *Stahl* and that, since Zelda Meisels had no pre-existing investment in Hayden Stone, the release of the rights flowing from that bailment lacked the "capital hue."

Unlike the agreement in *Stahl,* Zelda Meisels obtained a right to property in the form of subordinated debentures or stock when she made a payment under the SDN agreements. This additional right distinguishes the agreement from the bailment in *Stahl* and gives the transaction a "capital hue." Her subsequent release of her right to this property for consideration was the sale or exchange of a capital assert. *Lorch v. C.I.R.,* 605 F.2d 657 (2d Cir.1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980); *Michtom v. United States,* 224 Ct.Cl. 407, 626 F.2d 815 (1980).

Alternatively, plaintiffs argue that the loss sustained was ordinary under the rule announced in *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

However, the fact that Zelda Meisels was motivated to preserve her husband's employment (since she depended upon his advice and guidance in carrying on her trading activity) does not bring the loss transaction within the *Corn Products* doctrine. This doctrine has not been extended to transactions for profit except for those which are a part of the business of the taxpayer. Plaintiffs concede that Zelda Meisels was not a securities dealer and *Corn Products* is not applicable to the transaction involved. *Michtom v. United States,* 216 Ct.Cl. 12, 23 n. 13, 573 F.2d 58, 64 n. 13 (1978), *vacated on other grounds,* 224 Ct.Cl. 407, 626 F.2d 815 (1980) (en banc).

### III. *Conclusion*

For the foregoing reasons, as it is concluded that the $155,506 loss in question in this matter is correctly characterized as a capital loss, subject to the limitations of § 165(f), judgment shall be entered in favor of defendant with plaintiffs' petition to be dismissed.