**Raphael MEISELS and Zelda Meisels, Appellants,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 83–1219.**

United States Court of Appeals, Federal Circuit.

April 11, 1984.

ciently distinguishable as to confirm our decision to certify.

Sydney J. Schwartz, New York City, argued for appellants.

Donald H. Olson, Washington, D.C., argued for appellee. With him on brief were Glenn L. Archer, Jr., Asst. Atty. Gen., and Theodore D. Peyser, Jr., Washington, D.C.

Before RICH, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

Raphael Meisels (Raphael) and Zelda Meisels (Zelda) appeal from a judgment of the United States Claims Court (filed June 2, 1983) which dismissed their petition for a refund of $80,338.75 [1] in income taxes alleged to have been illegally assessed and collected for the taxable years 1971 and 1973. We affirm.

I

Appellants ask a refund of taxes paid following a determination by the Internal Revenue Service (IRS) that a loss claimed on their joint 1973 federal income tax return was subject to the capital loss limitations imposed by section 165(f) of the Internal Revenue Code of 1954.

In 1963 Raphael Meisels became a full-time general partner of H. Hentz & Co., a brokerage firm, and after that company's incorporation in 1971, he became an officer and stockholder in H. Hentz & Co., Inc. Zelda Meisels was an investor in H. Hentz & Co. In an effort to meet capital requirements imposed by the New York Stock Exchange, the firm and its corporate successors entered into subordination agreements with appellants and others which involved the execution of secured demand notes by which securities and cash owned by appellants and the others were subordinated to the rights of Hentz creditors.

H. Hentz & Co., Inc. was merged into Hayden Stone, Inc. in July 1973 as the result of a "Purchase of Assets" agreement, which included a requirement that the then current Hentz subordinated lenders would agree to become subordinated

---

1. The refund sought is based upon a loss sustained in 1973 with a carryback to 1971. Appellants seek $56,871.00 for 1971 and $23,467.75 for 1973.

lenders of Hayden. Zelda [2] complied by executing on August 17, 1973 a "Secured Demand Note" (SDN) for $490,000 payable to Hayden Stone, together with an accompanying "Secured Demand Note Collateral Agreement". Her motives, as stated by the trial judge, were profit and protection of her husband Raphael's employment. The SDN was secured by cash and securities to which Hayden could turn in the event of a "financial restriction", a specially defined term relating to capitalization problems. She retained beneficial ownership of the collateral securities, and she received 3 percent per year of the note amount as consideration for her pledge. Upon a refusal by Zelda to pay an amount demanded, Hayden's recourse was against the collateral. Any such payments would reduce the SDN amount and give Zelda the right (under a complex formula set forth in the collateral agreement) to receive either stock of Hayden Stone or certain junior debentures or, if neither was issued, the rights of a subordinated lender.

The current litigation originated with Hayden Stone's demand upon Zelda that, in accordance with her subordination agreement, it would liquidate collateral in the amount of $172,784 unless a cash payment in that sum was received from her by November 15, 1973. Zelda paid the amount demanded on November 15. By another agreement with Hayden Stone, on December 14, 1973, she released her rights (as stated *supra* ) to debentures or stocks. In exchange, Hayden agreed to (1) credit her with $17,278 (10 percent of the amount already paid) and (2) not make further demands on the SDN or collateral.

On their 1973 federal income tax return, appellants claimed an ordinary loss deduction for this transaction of $155,506 ($172,-784 minus $17,278), part of which was carried back to 1971. *See* note 1, *supra.* The IRS disallowed (on audit) this $155,506 deduction on the ground that it was properly subject to the capital loss limitations

imposed by IRC § 165(f). Raphael, who was then a Hayden Stone employee, was allowed his ordinary loss deduction of $133,710 on the same return for his equivalent SDN transaction.

The Meisels paid the additional tax, filed an unsuccessful refund claim, and initiated proceedings in the United States Court of Claims. The case was transferred to the Claims Court pursuant to the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (April 2, 1982). On cross motions for summary judgment, Judge Merow of the Claims Court held in the government's favor and entered judgment dismissing the Meisels' complaint. *See* 2 Cl.Ct. 567 (1983). The court decided (1) that the transaction was not merely a termination of bailment as in *Stahl v. United States,* 441 F.2d 999 (D.C.Cir.1970), but was a sale or exchange of a capital asset and (2) that although Zelda was motivated to protect Raphael's employment and his advice-giving to her, those facts were insufficient to bring this case under the doctrine of *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

II

Section 165 of the Internal Revenue Code of 1954 states in pertinent part:

SEC. 165. LOSSES.

(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) *Limitation on Losses of Individuals.* In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

\* \* \* \* \* \*

---

**2.** This case solely concerns transactions involving Zelda. Comparable transactions involving

Raphael are not before us. *See infra.*

(f) *Capital Losses.*—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.[3]

\* \* \* \* \* \*

At issue now is whether the Claims Court correctly categorized the loss Zelda incurred as a capital loss under section 165(f), *supra, i.e.,* a loss from a sale or exchange of a capital asset. "Capital Assets" is defined in I.R.C. section 1221, stating in relevant part:

> For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—[exceptions not relevant here]

\* \* \* \* \* \*

The Meisels say that the Claims Court erred in concluding that the transaction was a "sale or exchange" or involved a "capital asset". Their argument is that (1) the agreements were entered into for profit as part of the conduct of a business and the losses sustained thereby were ordinary losses because there was no sale or exchange of any capital asset, and (2) even if there can be considered to be a capital transaction, Zelda is entitled to ordinary business loss treatment because the original transaction was entered into to protect her business income and preserve her husband's employment with Hayden Stone, upon which taxpayers depended for the conduct of her business. We cannot accept these contentions.[4]

### III

■ First, we agree with the trial court's characterization that appellants' loss resulted from the "sale or exchange" of a "capital asset" and thus is subject to the limitation of section 165(f). Zelda's contingent rights under the collateral agreement constituted a "capital asset". That agreement granted her the right to property in the form of subordinated debentures or stock when she made a payment under the SDN agreement, which right she later relinquished for consideration. Zelda's contingent rights are indistinguishable in this regard from the similarly gained monetary claim of the taxpayer held by the Court of Claims to constitute a capital asset in *Michtom v. United States*, 626 F.2d 815, 224 Ct.Cl. 407 (1980) (*en banc*), vacating 573 F.2d 58, 216 Ct.Cl. 12 (1978). In *Michtom*, the taxpayer's subordinated loan agreement (also with Hayden Stone) granted him a monetary claim against the firm in the event of a payment demand, a claim which he exchanged for preferred stock. The Court of Claims held that exchange to fall under the limitations of section 165(f), saying that the monetary claim "was doubtless 'property' in the ordinary legal sense". 626 F.2d at 820. Appellants urge that here "[t]he so-called rights had no value", but the indisputable fact is that they afforded Zelda protection and financial options under the subordination agreement, and were relinquished for a substantial sum ($17,-278).

The key question thus becomes whether Zelda's loss was from a "sale or exchange" of that capital asset, as required by § 165(f). The December 14, 1973 agreement in which Zelda released her rights in exchange for $17,278 includes the following provisions:

> 3. Lender [*i.e.,* Zelda] does hereby *sell, assign, transfer* and *set over to Hayden*, its successors and assigns, all of Lender's rights under the ... SDN Agreement to receive Common Stock of Hayden or Hentz Junior Debentures ... otherwise issuable in certain events upon the final determination of the Hentz account ....

> 4. Lender does hereby *sell, assign, transfer and set over* to Hayden, its successors and assigns (i) all of Lender's

---

**3.** Sections 1211 and 1212 delineate the computation of a capital loss in assessing the deduction which may be taken against ordinary income.

**4.** It makes no difference to this case whether or not Zelda was engaged in the trade or business of investing. The Code (§§ 165, 1221) makes clear that, even for individuals engaged in a trade or business, a loss from the sale or exchange of a capital asset is controlled by the capital loss provision. *See also* Part IV *infra.*

rights under paragraph 4 of each SDN Debenture to receive Common Stock of Hayden or Hentz Junior Debentures (as defined therein) or to have the principal amount thereof increased, to which rights Lender would be otherwise entitled in certain events upon the final determination of the Hentz account ... and (ii) all of Lender's rights under paragraph 5 of each SDN Debenture to receive Common Stock of Hayden denominated as "contingent interest" in said paragraph 5, and any such right to "contingent interest" which Lender may have pursuant to Paragraph II of the SDN Agreement under paragraph 5 of the form of subordinated debenture annexed as Annex II to the SDN Agreement.

(Emphasis added).

Although the use of the words "sell" etc. in that agreement is not conclusive that the transaction was a sale or exchange for tax purposes, in this instance the language is representative of the true tax consequences. By making a cash payment of the $174,784 demanded under the SDN by Hayden Stone, Zelda acquired rights to securities. Far from being rights which had no value (as claimed by appellants), under the express language of the collateral agreement those rights were equal in value to the amount paid.[5] Zelda established a tax loss for 1973 through her subsequent release of those rights. The release of those rights under the new December 14 agreement was expressly made for a cash credit of $17,278. That transaction constituted a sale or exchange of a capital asset, with a resultant capital loss of $155,506 ($172,784 minus $17,278). *See* I.R.C. §§ 165(f), 1001, 1011, 1012, 1221.

Taxpayers cite *Stahl v. United States,* 441 F.2d 999 (D.C.Cir.1970) as supporting their position. They maintain that Zelda's release of her rights was, as in *Stahl,* the termination of a bailment agreement rather than a sale or exchange of a capital asset. Judge Merow correctly distinguished the circumstances in *Stahl* from those before us. Both cases concerned subordination

agreements with brokerage firms which allowed the firm to use the subject securities and/or cash to meet stock exchange capital requirements. In *Stahl,* the taxpayer pledged only securities, which were to have been returned as such by a particular date; prior to that time the firm breached the agreement by selling the securities, and then filed for bankruptcy. The question was whether the resultant loss was a non-business bad debt under I.R.C. § 166(d) (which would have been treated as a short-term capital loss) or an ordinary loss under § 165. The court held that the transaction was not capital in nature; the loss was ordinary under § 165 because the transaction was a bailment entered into for profit with a risk of loss.

The taxpayer in *Stahl* had no additional property right like Zelda's, contingent upon making a payment under her subordination agreement. Rather, the *Stahl* taxpayer had a specific right under her agreement to return of the securities, a right which became, after bankruptcy, a right to payment conditioned upon the funds available after payment to creditors. This difference in subordination agreements is critical. As properly noted by the Claims Court below, "[t]his additional right distinguishes [Zelda's] agreement from the bailment in *Stahl* and gives the transaction a 'capital hue'. Her subsequent release of her right to this property for consideration was the sale or exchange of a capital assent [sic]". There was no such transaction found in *Stahl.*

The opinions in two other similar cases, both involving subordinated loan agreements with Hayden Stone, also conform to this result, *Lorch v. Commissioner,* 605 F.2d 657 (2d Cir.1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980), and *Michtom v. United States,* 626 F.2d 815 (Ct.Cl.1980) (*en banc*). In *Lorch,* a husband and wife entered into subordinated loan agreements with Hayden Stone which required each (1) to give Hayden Stone a non-interest bearing promissory note of $100,000 and, (2) to place securities into an account with Hayden Stone as col-

---

**5.** The collateral agreement provided in par. VI for the issuance by Hayden Stone of debentures (or, comparably, stock) "in a principal amount equal to such payment of all or part of the unpaid principal amount of the Note".

lateral on the note. Those taxpayers maintained legal and beneficial ownership of the securities subject to a payment demand, were paid 5 percent annually on the face value of their notes, and—in the event a payment on the notes was demanded—each would receive a 6 percent subordinated debenture equal to the amount of the indebtedness represented by the note. Hayden Stone subsequently threatened to liquidate pledged securities, and the Lorches each limited the amounts of those liquidations by putting up some cash, an option contained in their agreements. *See* 605 F.2d at 660–661. Thus, neither those cash payments nor the broker's application of the amounts of the securities liquidations resulted in losses—no loss was realized upon the creation of the right to receive debentures. The only realization of gain or loss by taxpayers concerned the liquidation of the securities themselves.

The demand for payment by Hayden Stone had created a debtor-creditor relationship between the parties. Although the debentures were worth less than face value, they were not worthless, and no loss is incurred on a loan unless the debt is worthless. I.R.C. 165(g). As noted by the Second Circuit, "Hayden Stone's liquidation of petitioners' securities entitled them to a capital loss ·in the amount by which their bases in these securities exceeded the proceeds of sale". *Lorch*, 605 F.2d at 661.

That court found, however, that there had been no deductible loss—capital or ordinary—in the subsequent exchange by the Lorches of their right to receive subordinated debentures for preferred stock. Rather, this exchange was a tax-free recapitalization under I.R.C. 368(a)(1)(E). No recognizable loss had been realized by the Lorches in entering into the subordinated loan agreements because the priority of the Lorches' claims on the firm remained unaffected.

In *Michtom*, Hayden Stone liquidated Michtom's account according to the terms of a subordinated loan agreement. That agreement provided Michtom with a monetary claim against the firm, which he exchanged for preferred stock. The Court of Claims concluded that this exchange constituted a sale or exchange of a capital asset, subject to section 165(f), because (unlike the circumstances in *Lorch* but comparable to those in the present case) the exchange "took place outside the subordination agreement, and was not initially contemplated by the parties to that agreement .... Mr. Michtom realized no loss on [the] transaction [which occurred under the agreement]. His loss arose from his own later decision to exchange one asset for another". 626 F.2d at 820. Michtom's loss realized on the exchange was the difference between his basis in the monetary claim (which the court found to have been a capital asset) and the fair market value of the preferred stock. Similarly, Zelda's loss arose from her own later decision to exchange assets. Her loss realized on the exchange was the difference between her basis (in her rights to securities) and the amount for which those rights were released.

In *Michtom* and the case before us, certain rights arose for the taxpayers as a result of Hayden Stone's use of the taxpayer's cash for its needs under the subordination agreements. In both cases, the taxpayers sold or exchanged the substance of those rights (capital assets) in transactions which were not contemplated by the original agreements, and the consequent losses were capital losses, subject to section 165(f).

## IV

We also agree with the Claims Court that the principle established by *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955), and its progeny is of no aid to appellants. The Meisels' contention is that, even if the transaction could otherwise be considered to have been a sale or exchange of a capital asset, Zelda is entitled to ordinary business loss treatment because the transaction was entered into to protect her business income and preserve her husband's employment, upon which she depended for the conduct of her business.

There is no support in the *Corn Products* doctrine for this position. That her husband's ordinary loss deduction for his

similar transactions was allowed, perhaps because—unlike Zelda—his loss was incurred from an agreement entered into to protect his own employment with Hayden Stone, is of no avail to her. As noted by the Claims Court, appellants concede that Zelda was not a securities dealer, nor was she an employee of Hayden Stone. She was merely an investor. Simply calling agreements like those at issue Zelda's "business" is insufficient to demonstrate that they differ from the typical capital or investment transaction, which do not ordinarily fall under the *Corn Products* doctrine. *See Michtom, supra,* at 820. Her investment activities do not comprise a "business" in the same sense that the purchases and sales of corn futures by Corn Products Refining Company were an integral part of that company's manufacturing business.

Furthermore, there is no merit to the Meisels' proposition that Zelda may transform her capital loss into an ordinary loss, under *Corn Products,* because she was protecting her husband's (and business advisor's) employment. The benefits of that doctrine do not extend to the protection by one of someone else's trade or business.

### Conclusion

For these reasons, the judgment of the Claims Court is affirmed.

AFFIRMED.